Richard A. Lapping (SBN 107496)
rlapping@winston.com
Kelly M. Breen (SBN 267715)
kbreen@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5802
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

Attorneys for Specially Appearing Defendant
JOHN GUEST INTERNATIONAL, LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, as subrogee of George Cogan and Mary Frances Allen,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN GUEST USA, INC., FRANKE CONSUMER PRODUCTS, INC., and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. C 09-02432 BZ<br><br>**SPECIALLY APPEARING DEFENDANT JG INT'L'S REPLY TO PLAINTIFF CSAA'S OPPOSITION TO MOTION TO QUASH**<br><br>**Limited Appearance for the Purpose of Contesting Jurisdiction**<br><br>Date:     November 3, 2010<br>Time:    10:00 a.m.<br>Place:   Courtroom G, 15th Floor<br>Judge:   Bernard Zimmerman<br><br>**Complaint Filed:  May 7, 2009**<br>**Discovery Cutoff:  Oct. 15, 2010**<br>**Pretrial Conference:  Feb. 22, 2011**<br>**Trial Date:  Mar. 14, 2011** |

Specially appearing Defendant John Guest International Limited ("JG Int'l") submits the following reply to Plaintiff California State Automobile Association Inter-Insurance Bureau's ("CSAA") Opposition to JG Int'l's Motion to Quash (the "Opposition").

## I. INTRODUCTION

CSAA asserts in the Opposition that this Court has personal jurisdiction over nonresident corporation, JG Int'l.  However, CSAA has failed to make any showing, let alone a *prima facie*

showing, that JG Int'l has had the requisite minimum contacts with California, the forum state, required to establish jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specifically, CSAA has not shown that JG Int'l has had "systematic and continuous" contact with California, or that it has purposefully availed itself of the forum benefits. *Id.* at 320. Indeed, all the evidence in the record is emphatically to the contrary. Thus, CSAA's claims should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## II. ARGUMENT

### A. JG Int'l And John Guest USA Are Separate And Distinct Corporate Entities And Their Corporate Forms Must Be Respected

In support of its Motion to Quash, JG Int'l established by admissible evidence that JG Int'l and John Guest USA are separate and distinct corporations duly organized and existing in the jurisdictions in which they are incorporated. JG Int'l is duly incorporated and existing in the United Kingdom and maintains its principal place of business at Horton Road, West Drayton, Middlesex, UB7 8JL, United Kingdom, Tel: 01895449233. See Declaration of Barry Guest ("Guest Dec.") in Support of Defendants' Motion To Dismiss For Lack of Personal Jurisdiction at ¶ 5. By CSAA's admission, Defendant, John Guest USA, Inc. ("John Guest USA") is a separate corporate entity duly incorporated and existing in Delaware with its principal place of business in Fairfield, New Jersey. First Amended Complaint at ¶4.

#### 1. Plaintiff Has Adduced No Evidence To Refute The Separate And Distinct Corporate Existence Of JG Int'l And John Guest USA

Plaintiff now alleges that JG Int'l is "part of an unincorporated association known as The John Guest Group of Companies which constructs, designs, manufactures, assembles, sells and maintains fittings for water filter [sic]." Opp. 1:27. Plaintiff's only support for this assertion is a reference on a website where the term "The John Guest Group of Companies" appears as a collective reference to a number of legally separate entities, such as John Guest USA. See Exhibit A to the Declaration of Joseph G. Astleford. Plaintiff further alleges that JG Int'l's indirect subsidiary, John Guest USA, is also part of this so-called "unincorporated association." Opp. 2:15-16. The notion of an "unincorporated association" is a meaningless term, both legally and practically, that appears

nowhere on any of Plaintiff's exhibits depicting the website and is nothing more than speculation. It is solely on the basis of these unfounded assertions that CSAA asks this Court to find jurisdiction.

In fact, "The John Guest Group of Companies" does not have any legal meaning aside from its past use as an advertising term on a website. Although it is difficult to prove a negative, it is not impossible. The Court can take judicial notice of the United Kingdom's Companies House web portal (www.companieshouse.gov.uk) maintained by the Registrar of Companies for England and Wales, Scotland, and Northern Ireland pursuant to the Companies Act of 2006. Specifically, Exhibit A to the Declaration of Richard A. Lapping In Support of Specially Appearing Defendant JG Int'l's Reply to Plaintiff CSAA's Opposition to Motion to Quash ("Lapping Dec."), attaches the "About Us" page explaining the nature and function of the Companies House, including its function to incorporate and dissolve limited companies and to make information available to the public, much like the similar business portal website maintained by the California Secretary of State. Exhibit B (Lapping Dec.) attaches the alphabetical list of entities with "John Guest" as part of their name as a result of a search using that term on the Companies House web portal. Although there are, as expected, references to John Guest Int'l and John Guest Limited, there is no reference to "The John Guest Group of Companies" as a past or present legally recognized or existing company in England.

Federal Rule of Evidence 201(b)(2) permits this Court to take judicial notice of facts that are "not subject to reasonable dispute" and that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Under Federal Rule of Evidence 201(d), this Court must take judicial notice "if requested by a party and supplied with the necessary information." A court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *see also Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (holding courts may take judicial notice of records and reports of administrative bodies) (citing *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)(overruled on other ground by *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 111 (1991)). This includes "documents available on government websites." *Jarvis v. JP Morgan Chase Bank, N.A.*, No. CV 10-4184-GHK (FMOx), 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010).

The admissible evidence establishes that JG Int'l is an intermediate[1] holding company that does not manufacture, construct, design, assemble or sell any products. See Guest Dec. at ¶ 5. The speculation of Plaintiff is demonstrably misinformed. See Lapping Dec., Exhibits A and B.

### 2. Plaintiff Has Advanced No Basis To Ignore The Separate And Distinct Corporate Forms Of JG Int'l And John Guest USA

California law respects the corporate form unless the plaintiff presents evidence that the parent corporation is the "alter ego" of the subsidiary such that the parent "dominates" the subsidiary to the degree that they act as one entity. *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). CSAA has presented no evidence to establish that JG Int'l is the alter ego of John Guest USA.

The fact that this Court has jurisdiction over John Guest USA, JG Int'l's indirect subsidiary, is insufficient to establish jurisdiction over JG Int'l. *Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc*., 671 F. Supp. 1525, 1532 (C.D. Cal. 1987) (no jurisdiction exists over a foreign parent corporation because its only contact with the forum state was its status as the parent entity of a defendant corporation); *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001) (holding jurisdiction over an indirect subsidiary is insufficient to submit the foreign parent corporation to jurisdiction in California). Thus, despite CSAA's unsupported assertions regarding an unspecified "association" between JG Int'l and John Guest USA, jurisdiction over John Guest USA does not confer jurisdiction over JG Int'l.

Furthermore, CSAA has failed to present <u>any</u> evidence demonstrating that JG Int'l exercises "pervasive and continual control" over John Guest USA's "day-to-day activities" such that it would be proper to extend jurisdiction to JG Int'l. *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1241-42 (N.D. Cal. 2004); *Moody v. Charming Shoppes of Delaware, Inc*., No. C 07-06073 MHP, 2008 WL 2128955, at *7 (N.D. Cal. May 20, 2008). John Guest USA is an indirect subsidiary of JG Int'l. However, beyond this corporate status there is <u>no</u> business relationship between the two

---

[1] Carl Tronco, Vice President of Finance and Administration at John Guest USA, testified at his deposition on October 12, 2010 ("Tronco Depo."), that JG Int'l was the ultimate parent of the John Guest group of companies. Tronco Depo. 17:19-21 (excerpted pages attached to the Lapping Dec. as Exhibit C). However, this is incorrect. In April 2010, John Guest Holdings Ltd. became the ultimate parent of the John Guest companies, leaving JG Int'l as an intermediate holding company. This correction does not affect the issues here but is supplied only in the interest of full accuracy.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

entities and, as testified to by Carl Tronco[2] at his deposition, not a single contract or agreement exists between them. Tronco Depo. 54:14-19; 29:13-18, Lapping Dec. at Exhibit C. JG Int'l is an intermediate holding company with no employees and no communications with John Guest USA. Tronco Depo. 14:2-25, Lapping Dec. at Exhibit C. JG Int'l does not provide any funding to John Guest USA and John Guest USA does not report to JG Int'l. Tronco Depo. 14:2-25, Lapping Dec. at Exhibit C. John Guest USA runs its own day-to-day core business functions with a separate and independent management team located in New Jersey and without interference or input from JG Int'l. Guest Dec. at ¶ 9. Furthermore, the two entities do not share officers or employees, have separate boards of directors and maintain separate corporate records, bank accounts, and other financial and accounting books and records. *Id.* Thus, it is clear that JG Int'l does not exercise "pervasive and continual control" over John Guest USA's "day-to-day activities" such that it would be proper to extend jurisdiction to JG Int'l. CSAA's bald assertion, unconstrained by evidence or authority, that JG Int'l and John Guest USA are an "unincorporated association" — and thus, JG Int'l is subject to jurisdiction in California — is not only unsupported, it would turn established jurisprudence on its head.

### B. CSAA Has Failed To Establish General Jurisdiction Over JG Int'l

Establishing general jurisdiction is a "fairly high" standard that requires substantial, continuous and systematic contacts with California. *Data Disc., Inc. v. Sys. Tech. Assoc. Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). Further, the Ninth Circuit has held that general jurisdiction requires that the defendant's contacts be of the sort that "approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). CSAA argues that general jurisdiction over JG Int'l is proper based solely on the following premises: (i) JG Int'l is the owner of the "JG" trademark found on the product at issue and on unrelated items purchased in California; (ii) JG Int'l held itself out as the manufacturer of the product on its website where the phrase "World Headquarters and

---

[2] In the Opposition, CSAA refers to the deposition of Carl "Trunco," which it asserts took place on October 12, 2010. The Senior Vice President of Finance and Administration of John Guest USA that was deposed on October 12, 2010 was Carl Tronco, which JG Int'l assumes is the same person that CSAA refers to in the Opposition.

Manufacturing Base" appears; and (iii) John Guest USA has two sales managers located in California. Opp. 6:20 – 7:2. As set forth below, the arguments that these premises provide a basis for jurisdiction are unsupported by any authority (because there is none) and the second premise is distorted and wrong in any event.

### 1. Ownership Of A Trademark Cannot Confer Jurisdiction Here

Without citing to a single case, CSAA asserts that because JG Int'l owns the trademark logo found on the fitting at issue and certain products that Joseph G. Astleford purchased on October 7, 2010 and October 8, 2010, that general jurisdiction is proper. Opp. 6:16 –7:4. However, ownership of intellectual property that finds its way into a forum state is insufficient to establish jurisdiction in California. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) (the mere fact that a foreign corporate defendant owned and profited from the publication of photographs in magazines distributed in California was not sufficient to subject it to personal jurisdiction). The Ninth Circuit stated that if the plaintiff's argument were accepted, it would lead to the absurd result of having foreign corporate owners of art amenable to personal jurisdiction in every state in which their art eventually is displayed. *Id.* Thus, the fact that JG Int'l is the owner of the "JG" trademark displayed on products in California or the product at issue is insufficient to establish jurisdiction in California.

### 2. The Website Does Not Establish That JG Int'l Manufactures Anything And Manufacturing Does Not Confer Jurisdiction Here

CSAA's contention that JG Int'l "held itself out as the manufacturer of these products on its web site" is based solely on the appearance of the phrase "World Headquarters and Manufacturing Base" and references to the "John Guest Group of Companies" as a leading manufacturer. These distortions are not probative and are directly refuted by the admissible evidence produced by JG Int'l in support of its Motion to Dismiss for Lack of Personal Jurisdiction. See Guest Dec. at ¶¶ 5, 7-8.

CSAA relies on distortion and omission. The John Guest Group of Companies is an advertising reference to a number of legally separate companies. There is no legally recognized entity known as the John Guest Group of Companies. See Lapping Dec., Exhibits A and B. To the extent that the term refers to one or more manufacturing entities, it is not evidence that JG Int'l is a manufacturer rather than an intermediate holding company as the uncontradicted evidence

establishes.  Nor does the fact that the phrase "World Headquarters and Manufacturing Base" appears on the website establish any specific fact relevant to jurisdiction.  At most, it establishes that JG Int'l is domiciled at the same location in England as the world headquarters and the manufacturing base; it does not prove that JG Int'l is anything other than an intermediate holding company.

CSAA omits the web page that is reached when a visitor clicks on the link "Contact JG in the UK."  Attached to the Lapping Dec. as Exhibit D is a copy of this omitted page, which displays the contact information for John Guest Ltd., not JG Int'l.  This omission illustrates that the generalized references on a website for perusal by the public and interested customers is not a substitute for actual legal and corporate relationships and functions.  JG Int'l does not own, operate or control the "World Headquarters and Manufacturing Base" – another legally distinct company does.

Again without citing to a single case in support of its position, CSAA asserts that its distorted juxtaposition of JG Int'l with the phrase "World Headquarters and Manufacturing Base" on its website, supports a finding that general jurisdiction is proper.  Opp. 6:28 –7:2.  However, jurisdiction cannot be based solely on the operation of a passive website that merely provides information.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).  In fact, no court has ever held that an Internet advertisement alone is sufficient to subject a party to jurisdiction in another state.  *Id.*  There must be "something more" to demonstrate that the defendant directed his activity toward the forum state.  *Id.* at 1322.  Here, the reference on JG Int'l's website to its status as the "World Headquarters and Manufacturing Base," which has been intentionally distorted by CSAA, and was not specifically directed to California, is insufficient to confer jurisdiction.

Furthermore, and as Carl Tronco, the Senior Vice President of John Guest USA, and the person most knowledgeable about the relationship between JG Int'l and John Guest USA, competently testified, "John Guest International Limited does not manufacture products."  See Tronco Depo. 16:8-11; 29:25 –30:2, Lapping Dec. at Exhibit C.  An intentionally misconstrued statement on a website does not change this fact.  In addition, even if JG Int'l did manufacture the fitting at issue – which it did not – the fact that a company manufactures a product and introduces it into the stream of commerce on the other side of the globe does not establish that it purposefully

availed itself of the benefits of California as a forum. The United States Supreme Court has established limits on jurisdiction so that "[e]very seller of chattels . . . [does not] in effect appoint the chattel his agent for service of process." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980). A court must examine "the defendant's conduct and connection with the forum State" and determine whether "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). Here, JG Int'l, an intermediate holding company, that did not sell, manufacture or distribute the product at issue, was completely unaware that the fitting was even sent outside of the United Kingdom and made no efforts to directly solicit the California market. Guest Dec. at ¶ 8. CSAA has presented <u>no</u> evidence to the contrary. Thus, CSAA's second argument that this Court has general jurisdiction over JG Int'l fails.

### 3. A Subsidiary's Employees Do Not Confer Jurisdiction On The Parent

Lastly, CSAA asserts that general jurisdiction is proper because John Guest USA, the indirect subsidiary of JG Int'l, employs two sales managers that live in California. Opp. 4:2-3.[3] Once again, CSAA asks the Court to ignore corporate form and conflate John Guest USA and JG Int'l. There is no basis to do so. JG Int'l has no employees, offices or any other presence in California. Guest Dec. at ¶ 5. Additionally, the two John Guest USA employees residing in California do not report to and have no contact with JG Int'l in any capacity. Tronco Depo. 43:18-44:2, Lapping Dec. at Exhibit C. It is well-established law that a subsidiary's contacts with the forum state does not establish jurisdiction over the foreign parent corporation. *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984). Where a parent and a subsidiary are separate and distinct corporate entities, as is the case here, the presence of one in the forum state may not be attributed to

---

[3] John Guest USA does not maintain an office in California. Tronco Depo. 39:19-22, Lapping Dec. at Exhibit C. While these two John Guest USA employees happen to reside in California, they are sales managers that are responsible for sales in several states. Tronco Depo 40:3-6; 42:19-25, Lapping Dec. at Exhibit C.

the other. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d at 459. Consequently, even if the fact that John Guest USA had two employees that lived in California constituted a "presence" in California of John Guest USA, this has no bearing on the jurisdictional analysis with regard to JG Int'l. The totality of JG Int'l's conduct in California could not possibly be considered to "approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d at 1086. As such, this Court does not have general jurisdiction over JG Int'l.

### C. CSAA Has Failed To Establish Specific Jurisdiction Over JG Int'l

Plaintiff's four-sentence argument addressing specific jurisdiction essentially, again without citing authority, repeats the insufficient arguments it raises for general jurisdiction. Opp. 7:6-12. Thus, for the reasons and citations discussed above and in Section III.B of JG Int'l's Motion to Dismiss for Lack of Personal Jurisdiction, specific jurisdiction is improper as well.

### III.  CONCLUSION

For the reasons set forth above, specially appearing nonresident Defendant JG Int'l respectfully requests that this Court grant its Motion to Dismiss for Lack of Personal Jurisdiction.

Dated: October 27, 2010                                    WINSTON & STRAWN LLP

By:    */s/ Richard A. Lapping*
Richard A. Lapping
Attorneys for Specially Appearing Defendant

JOHN GUEST INTERNATIONAL LIMITED